UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENDA EVERETTE,

       Plaintiff,

v.                             CASE No. 8:12-CV-106-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claim for supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

## I.

The plaintiff, who was thirty-four years old at the time of the administrative hearing and who has an eighth grade education (Tr. 33), has engaged in only part-time work that does not qualify as substantial gainful

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

activity (Tr. 35, 36).  She filed a claim for supplemental security income payments, alleging that she became disabled due to a blood clot and poor circulation in her right leg (Tr. 154). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "history of right lower extremity deep venous thrombosis with pulmonary embolism; hypertension; diabetes mellitus; obesity; post-traumatic stress disorder (PTSD); history of learning disabilities, not otherwise specified (NOS); [and] major depressive disorder with psychosis (20 CFR 416.920 (c))" (Tr. 18).   The law judge concluded that, despite these impairments (Tr. 20):

> [t]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she requires the option to alternate between sitting and standing in 1 hour increments.   The claimant has a moderate concentration deficit that precludes complex and detailed job tasks, but permits simple, routine, repetitive work as embraced by the unskilled and lowest end of the semi-skilled occupational base. The claimant has a moderate socialization deficit that precludes jobs other than those considered

> vocationally as low-stress. More specifically, low-
> stress jobs are those with an absence of stringent
> production goals or time targets.

The law judge found that the plaintiff had no past relevant work,

as her earnings were never at the level of substantial gainful activity (Tr. 24).

However, based upon the testimony of a vocational expert, the law judge

ruled that there are jobs that exist in significant numbers in the national

economy that the plaintiff can perform, such as hand packager, assembler, and

information clerk (Tr. 25). The law judge therefore decided that the plaintiff

was not disabled (id.). Accordingly, the Appeals Council let the decision of

the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a

claimant must be unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which

... has lasted or can be expected to last for a continuous period of not less than

twelve months."   42 U.S.C. 1382c(a)(3)(A).   A "physical or mental

impairment," under the terms of the Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff's sole argument is that the vocational expert's opinion that the plaintiff could perform jobs available in the national economy does not constitute substantial evidence that the plaintiff is not disabled because it is based upon a hypothetical question that did not include all of the plaintiff's mental limitations (Doc. 22, pp. 2, 5).[2] Specifically, the plaintiff argues that the hypothetical question was "inadequate to account for

---

[2]The plaintiff has not articulated any challenge to the law judge's findings with regard to her physical impairments and, therefore, any such challenge is abandoned (<u>see</u> Doc. 14, p. 2).

the [plaintiff's] moderate limitations in concentration, persistence and pace"

(id.). This contention is baseless.

The law judge posed to the vocational expert the following

hypothetical question concerning the plaintiff's mental limitations (Tr. 43):

> Q: ... Nonexertionally the claimant would have
> both a moderate concentration and a moderate
> socialization deficit.   Moderate concentration
> deficit would preclude complex and detailed job
> tasks, but permit simple, routine, repetitive work
> embraced by the unskilled, and lower [end of the]
> semiskilled occupational base.   The moderate
> socialization deficit would preclude jobs other than
> those considered vocationally as low-stress and
> low-stress, for the purpose of [your analysis],
> would be defined by the absence of stringent
> production goals or time targets.[3]

In response, the expert opined that the plaintiff could be employed as a hand

packager, assembler, and information clerk (Tr. 44).

"In order for a vocational expert's testimony to constitute

substantial evidence, the ALJ must pose a hypothetical question which

comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d

1219, 1227 (11th Cir. 2002).  On the other hand, the law judge is not required

to include in the hypothetical question allegations that have been properly

---

[3]The language in brackets corrects two obvious transcription errors.

rejected. <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363 F.3d 1155, 1161
(11th Cir. 2004).

      In this case, the residual functional capacity found by the law
judge matches the pertinent hypothetical question posed to the vocational
expert (<u>compare</u> Tr. 20 <u>with</u> Tr. 43). Consequently, the hypothetical question
is not flawed.  <u>See</u> <u>Richter</u> v. <u>Commissioner of Social Security</u>, 379 Fed.
Appx. 959, 960 (11th Cir. 2010)(hypothetical questions comprise the
claimant's previously-determined limitations).   Rather, the plaintiff's
contention that the law judge did not include all of the plaintiff's limitations
is properly asserted as a challenge to the law judge's determination of her
residual functional capacity.

      Such a challenge, however, is unpersuasive because substantial
evidence supports the law judge's finding that the plaintiff had a moderate
concentration deficit which precludes her performance of complex and
detailed job tasks, but permits simple, routine and repetitive work as
embraced by the unskilled and lowest end of the semi-skilled occupational
base (Tr. 20). Arguably, the law judge's findings in this regard reflect a
generous view of the evidence, as none of the medical records contain an
opinion that the plaintiff's concentration is significantly impaired, and the

plaintiff herself testified that it is a leg problem that precludes her from working (Tr. 42). Moreover, the plaintiff does not even suggest what additional functional limitations the law judge should have included in the residual functional capacity due to a moderate deficit in concentration, persistence, or pace.

The plaintiff's psychological medical records reflect that Suncoast Community Health Centers referred her to a psychiatrist in June 2009 for depression after the death of her father (Tr. 310-11). Later that month, Dr. Bharminder S. Bedi conducted a psychiatric evaluation of the plaintiff, which emphasized the recent death of the plaintiff's father (Tr. 244-46). Dr. Bedi found that the plaintiff was "somewhat depressed, withdrawn, obsessive, anxious [and] nervous" but that she was not suicidal, psychotic or manic[;] insight is adequate[,] and [s]peech is normal" (Tr. 245).[4] Dr. Bedi opined that the plaintiff had an adjustment disorder and told the plaintiff to

---

[4]Dr. Bedi assessed the plaintiff with a GAF score of around 55 to 60 (Tr. 245). The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)" (id.).

return in two to three weeks (Tr. 245-46), but the plaintiff never returned (<u>see</u> Tr. 371).

Psychologist Dr. Cecilia Yocum subsequently conducted a mental status evaluation of the plaintiff, and opined that the plaintiff had PTSD, major depressive disorder, and a history of learning disabilities (Tr. 373). Nevertheless, Dr. Yocum observed that the plaintiff was attentive, oriented in all three spheres, her long-term memory was intact, and her speech was coherent, logical, and rational (Tr. 372-73). Similarly, Brian Zilka, M.D., observed during a consultative examination that the plaintiff "had clear thought processes[, her] memory was normal and concentration was good. The [plaintiff] was oriented to time, place, persons and situation" (Tr. 376). Moreover, Dr. Eric Wiener and Dr. Martha Putney, non-examining reviewing psychologists, both opined that the plaintiff did not even have a severe mental impairment, and that the medical records showed only mild limitations in maintaining concentration, persistence, or pace (Tr. 326-38; 392-404). With regard to the latter opinion, Dr. Putney specified (Tr. 404):

> [the plaintiff's] ADLs [activities of daily living] are intact from a cognitive standpoint, including the more advanced abilities to drive and to manage her finan[c]ial affairs. Her MSE [mental status examination] is otherwise WNLs [within normal limits] per the mental and physical CE

[consultative examination]: good ATTN/ CONC [attention/concentration], mildly decreased STM [short term memory], intact IM [immediate memory]/, LTM [long term memory]/cognition.

The law judge stated that he gave significant weight to the opinions of Dr. Weiner and Dr. Putney, although the law judge found the plaintiff more limited in her socialization and concentration capabilities based on subsequent records from a psychiatrist (Tr. 19, 23).[5]

In this connection, the law judge found that, based on the psychiatrist's evaluation in May 2011, the plaintiff had developed significant mental work-related limitations (Tr. 23). However, the doctor's progress notes (for only two visits) do not specify concentration deficits. Thus, he noted the plaintiff's various complaints, which included anxiety, depression, hallucinations, and decreased motivation, and diagnosed her with major depressive disorder with psychosis, and assigned her a GAF score of 48 on May 2, 2011 (Tr. 423). However, the progress notes do not indicate that, due

[5] The law judge identified the psychiatrist as Dr. H. Botros-Mikail (Tr. 23). The plaintiff and the Commissioner think it was Dr. A.K. Vijapura (Doc. 22, p. 7; Doc. 25, p. 7 n.4). The confusion is caused by the fact that both names are on the two pages of notes of the plaintiff's two visits (Tr. 422, 423). However, only Dr. Botros-Mikail's name with his DEA number is on the page listing the plaintiff's medications (Tr. 424). That suggests that the law judge may have gotten the psychiatrist's name right. On the other hand, the plaintiff identified her psychiatrist at the hearing as Dr. Vijapura, but that was in response to a leading question (Tr. 40). This uncertainty really makes no difference except that it seems to indicate that it was not much of a treating relationship if the doctor's name is unclear.

to the plaintiff's mental impairments, she could not work, nor is there specification of diminished ability to maintain concentration, or of resulting functional limitations.

Significantly, the plaintiff has not identified any additional mental limitations that should have been included in the residual functional capacity due to her moderate concentration deficit. Rather, she argues vaguely that, although the law judge is not bound by a GAF score, the law judge should have "at least ... considered" the plaintiff's GAF score of 48 (Doc. 22, pp. 7-8; Tr. 423). This argument is deemed abandoned because it fails to comply with the scheduling Order. That Order requires the plaintiff to "identify with particularity the discrete grounds upon which the administrative decision is being challenged" and to support such challenges "by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 14, p. 2). A contention that the law judge failed to consider a GAF score is not a challenge to the hypothetical question – which is the only issue specified – but is a challenge to the opinion of a medical doctor. No such issue was particularized. Moreover, there was no development of an argument regarding the need to evaluate expressly a GAF score rendered by a psychiatrist the first time he saw the plaintiff.

In all events, this unspecified contention lacks merit. A GAF

score of 48 is at the upper range of serious symptoms. Thus, a rating of 41-50

reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional

rituals, frequent shoplifting) OR any serious impairment in social,

occupational, or school functioning (e.g., no friends, unable to keep a job)."

Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th

ed., Text Revision), p. 34.

In the first place, there is no reason to conclude that the law

judge did not consider this evidence. Thus, the law judge noted in his

decision the psychiatrist's treatment of the plaintiff, and the physician's

diagnosis and prescription of psychotropic medication (Tr. 23). Significantly,

the law judge found that the plaintiff had significant mental work-related

limitations based on the psychiatrist's evaluation of the plaintiff (see Tr. 19,

23). In this connection, however, the progress notes contain little information

on the functional limitations resulting from the plaintiff's impairments (see

Tr. 422-24). Therefore, it is reasonable to conclude that, in opining that the

plaintiff had a moderate impairment in concentration, the law judge gave

some weight to the psychiatrist's assessment of a GAF of 48.

As the plaintiff seemingly acknowledges (Doc. 22, p. 8), the law judge was not required to accept this GAF score as establishing that the plaintiff had greater mental limitations than the law judge found. Significantly, the Commissioner has declined to endorse the GAF scale for use in the Social Security programs. <u>Wind</u> v. <u>Barnhart</u>, 133 Fed. Appx. 684, 692 n.5 (11th Cir. 2005). Moreover, a single GAF score does not provide solid evidence of a severe mental impairment, especially where, as here, the score was assigned the first time the psychiatrist saw the plaintiff. Consequently, the psychiatrist's score of 48 merely reflects the psychiatrist's observation of the plaintiff on one day. Indeed, the plaintiff reported at her follow-up visit three weeks later that "her mood is getting better" (Tr. 422), and there is no indication in the record that the plaintiff returned to the psychiatrist or sought other help for her mental impairments.

In sum, there is ample evidence supporting the law judge's determination of the plaintiff's mental residual functional capacity. Further, the plaintiff has not identified any additional mental limitations she allegedly has due to her moderate concentration deficit, and she definitely has not cited to evidence which compelled the law judge to include more limitations in the

mental residual functional capacity. <u>See</u> <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>, 386 F.3d at 1027.

The plaintiff also asserts "[t]he finding that the [plaintiff] is limited to unskilled work has been found to be insufficient to account for difficulties in concentration, persistence or pace" (Doc. 22, p. 7). To the extent the plaintiff argues that the mental limitations in the residual functional capacity and the operative hypothetical question are insufficient as a matter of law to account for moderate difficulties in concentration, persistence, or pace, that contention is unpersuasive.

The leading case cited by the plaintiff in this regard is <u>Winschel</u> v. <u>Commissioner of Social Security</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2001)). However, <u>Winschel</u> does not state such a holding. Rather, as the Commissioner points out (Doc. 25, p. 9), <u>Winschel</u> holds that, at step five of the sequential analysis, a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence, or pace identified at step two of the sequential analysis.

This case is distinguishable from <u>Winschel</u> (and <u>Richter</u> v. <u>Commissioner of Social Security</u>, 379 Fed. Appx. 959 (11th Cir. 2010), which is also cited by the plaintiff) because the law judge's hypothetical question

explicitly and implicitly accounted for the plaintiff's moderate concentration deficit. Thus, the law judge stated in the hypothetical question to the expert that the plaintiff had a "[m]oderate concentration deficit" (Tr. 43). Furthermore, the law judge included in the hypothetical question his finding that the plaintiff's "[m]oderate concentration deficit would preclude complex and detailed job tasks, but permit simple, routine repetitive work embraced by the unskilled, and lowest end of the semiskilled occupational base" (see Tr. 20, 43). As discussed above, that finding is supported by substantial evidence, if not overly generous, as there is no medical opinion that the plaintiff even has a moderate limitation in concentration, persistence, or pace. Under these circumstances, the residual functional capacity and the hypothetical question did adequately account for the plaintiff's moderate concentration deficit. See Washington v. Social Security Administration, Commissioner, 2013 WL 150237 (11th Cir.)(unpub. dec.)(limitation to simple, routine tasks adequately addressed the plaintiff's moderate limitations as to concentration, persistence, or pace because the evidence showed that the plaintiff could perform such tasks); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874, 876 (11th Cir. 2012)(unpub. dec.)(medical evidence demonstrated that the performance of simple, routine and repetitive

tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); <u>Scott</u> v. <u>Commissioner of Social Security</u>, 2012 WL 5358868 (11th Cir.)(unpub. dec.) (medical evidence demonstrated that the plaintiff could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, or pace); <u>Jarrett</u> v. <u>Commissioner of Social Security</u>, 422 Fed. Appx. 869, 872 (11th Cir. 2011)(medical evidence supports the conclusion that the plaintiff could perform simple tasks notwithstanding a moderate limitation in maintaining concentration, persistence, and pace). Therefore, the plaintiff's contention that the law judge's limitation to simple, routine, repetitive work (Tr. 20) does not account for her moderate concentration deficit is unmeritorious.

Finally, the plaintiff seems to hint that, in determining her credibility, the law judge improperly considered inconsistencies between the plaintiff's testimony and her functional reports because there was a gap of more than one year between them (Doc. 22, p. 7). However, no credibility challenge was properly asserted in her memorandum and, in accordance with the scheduling Order, it is properly deemed abandoned (<u>see</u> Doc. 14). Thus, as indicated, the scheduling Order provided that the plaintiff "must identify

with particularity the discrete grounds upon which the administrative decision is being challenged" and support those challenges "by citations to the record of the pertinent facts and by citations of the governing standards" (id., p. 2). However, the plaintiff's only express challenge concerned the completeness of the law judge's hypothetical question (Doc. 22, pp. 2, 5). Significantly, the Commissioner did not discern a credibility argument, either. Furthermore, the plaintiff did not articulate the legal standards for a credibility argument, or present any legal authority that the law judge could not consider evidence from earlier in the alleged disability period in determining the credibility of the plaintiff's subjective allegations.

Moreover, the plaintiff does not even mention the other reasons articulated by the law judge for discounting her credibility. Thus, the law judge also considered that "[t]he objective medical evidence does not confirm the severity of the alleged symptoms, nor does the weight of the medical and non-medical evidence demonstrate the presence of an impairment that reasonably could be expected to produce pain and functional limitation to the degree alleged by the claimant" (Tr. 20). Additionally, the law judge noted that the plaintiff stopped working due to personal reasons, and that the plaintiff never had a significant work history, which suggested to the law

judge that the plaintiff's unemployment was for reasons other than an inability to work due to her physical and mental impairments (Tr. 24). The plaintiff has not undermined any of the stated reasons for the law judge's credibility decision.

Therefore, to the extent that the plaintiff was asserting a credibility challenge, it is both abandoned for insufficient development and is lacking in merit.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment accordingly and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 6th day of February, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE